IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
YOUNGTOWN DIVISION

| | |
|---|---|
| Madelyn Hess, | |
| *On behalf of herself and those similarly situated,* | Case No. |
| Plaintiff, | |
| v. | |
| Hallrich Incorporated; SFR X Holdings, LLC d/b/a/ Bluegrass Pizza; Greg Chaffin; John Doe 1-10; and Doe Corporation 1-10, | Jury Demand Endorsed Hereon |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Madelyn Hess, on behalf of herself and similarly situated individuals, brings this action against Defendants Hallrich Incorporated; SFR X Holdings, LLC d/b/a/ Bluegrass Pizza ("SFR X Holdings, LLC"); Greg Chaffin; John Doe 1-10; and Doe Corporation 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), O.R.C. § 2307.60; and unjust enrichment.

2.      Upon information and belief, Defendants operate and/or operated several Pizza Hut

Pizza franchise locations across the United States. ("Defendants' Pizza Hut stores").

3.      Defendants' Pizza Hut stores were owned and operated by Hallrich Incorporated (the "Hallrich Defendants") from the beginning of the time period relevant to this lawsuit until early 2022.

4.      From approximately the beginning of 2022 to present, SFR X Holdings, LLC d/b/a/ Bluegrass Pizza and Greg Chaffin (the "Bluegrass Defendants") have owned and operated Defendants' Pizza Hut Stores.

5.      Defendants repeatedly and willfully violated the Fair Labor Standards Act and Ohio wage law by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

6.      Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA and the Ohio Law.

7.      All delivery drivers at the Defendants' Pizza Hut stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for expenses.

8.      Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers nationwide who elect to opt in pursuant to the FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA by Defendants.

9.      Plaintiff brings this action on behalf of herself and similarly situated former employees pursuant to Federal Rule of Civil Procedure 23 to remedy violations of Ohio Const. Art. II, § 34a, the Prompt Pay Act, R.C. § 2307.60, and the doctrine of unjust enrichment.

**Jurisdiction and Venue**

10.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

11.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

12.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants' principal place of business in this District and Defendants are residents of the state of Ohio.

**PARTIES**

**<u>Plaintiff</u>**

**Madelyn Hess**

13.     Plaintiff Madelyn Hess is a resident of Ohio.

14.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA and section 34a.

15.     Plaintiff has given written consent to join this action.

**<u>Defendants</u>**

**<u>Hallrich Incorporated</u>**

16.     Defendant Hallrich Incorporated suffered or permitted Plaintiff and other delivery drivers to work.

17.     Defendant Hallrich Incorporated, is a foreign corporation,  incorporated in Kansas, authorized to do business under the laws of the state of Ohio.

18.     From the beginning of the relevant time period until approximately early 2022, Hallrich Incorporated could command where, when, and how much labor was performed by the

3

delivery drivers at the Defendants' Pizza Hut stores.

19.     From the beginning of the relevant time period until approximately early 2022, Hallrich Incorporated had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

20.     From the beginning of the relevant time period until approximately early 2022, upon information and belief, Hallrich Incorporated applied or caused to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

21.     From the beginning of the relevant time period until approximately early 2022, Hallrich Incorporated had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

22.     From the beginning of the relevant time period until approximately early 2022, Hallrich Incorporated had maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

23.     From the beginning of the relevant time period until approximately early 2022, Hallrich Incorporated had been an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Ohio law.

24.     From the beginning of the relevant time period until approximately early 2022, Hallrich Incorporated had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

25. Hallrich Incorporated had grossed in excess of $500,000 in revenue per year.

**SFR X Holdings, LLC**

26. Defendant SFR X Holdings, LLC suffers or permits Plaintiff and other delivery drivers to work.

27. Defendant SFR X Holdings, LLC, is a foreign limited liability corporation, with its principal place of business at 3309 Collins Lane, Louisville, KY 40245 and authorized to do business under the laws of the state of Ohio.

28. At all relevant times, SFR X Holdings, LLC can command where, when, and how much labor is performed by the delivery drivers at the Defendants' Pizza Hut stores.

29. At all relevant times, SFR X Holdings, LLC has had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

30. At all relevant times, upon information and belief, SFR X Holdings, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

31. At all relevant times, SFR X Holdings, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

32. At all relevant times, SFR X Holdings, LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

33. At all relevant times, SFR X Holdings, LLC has been an "employer" of Plaintiff and

similarly situated employees as that term is defined by the FLSA and Ohio law.

34.     At all relevant times, SFR X Holdings, LLC has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

35.     SFR X Holdings, LLC has grossed in excess of $500,000 in revenue per year.

36.     Upon information and belief, SFR X Holdings is liable as a successor in interest for damages suffered by Plaintiff and the delivery drivers at Defendants' Pizza Hut stores during all relevant times while Defendants' Pizza Hut stores were owned and operated by the Hallrich Defendants because:

a)  Upon information and belief, that there is an express or implied agreement by SFR X Holdings, LLC to assume the Hallrich Defendants liability;

b)  Upon information and belief, the transfer of Defendants' Pizza Hut Stores from the Hallrich Defendants to SFR X Holdings, LLC was a de facto merger;

c)  Upon information and belief, SFR X Holdings, LLC has the ability to provide relief for the claims alleged;

d)  Upon information and belief, SFR X Holdings, LLC knew or should have known that the pay practices it continued were, in fact, illegal. Thus, SFR X Holdings, LLC was on notice of the claims in this case. This is particularly true given the proliferation of pizza delivery driver lawsuits.

e)  Upon information and belief, there has been a substantial continuity of business operations between SFR X Holdings, LLC and the Hallrich Defendants business;

f)  Upon information and belief, SFR X Holdings, LLC uses the same facilities as the Hallrich Defendants;

g) Upon information and belief, SFR X Holdings, LLC uses the same or substantially the same workforce as the Hallrich Defendants;

h) Upon information and belief, SFR X Holdings, LLC uses the same or substantially the same supervisory personnel as the Hallrich Defendants;

i) Upon information and belief, that the same jobs existed under substantially the same working conditions at Defendants' Pizza Hut Stores when they were owned by the Hallrich Defendants;

j) Upon information and belief, SFR X Holdings, LLC uses the same machinery, equipment and methods of production as the Hallrich Defendants; and

k) Upon information and belief, SFR X Holdings, LLC produces the same product as the Hallrich Defendants.

l) At this time, it is unknown whether the Hallrich Defendants can provide the relief sought in this lawsuit.

m) To the extent that the Hallrich Defendants are liable for any of the claims in this lawsuit, so too is SFR X Holdings, LLC as a successor.

37.     Because SFR X Holdings, LLC is a successor to the Hallrich Defendants, SFR X Holdings, LLC is liable to delivery drivers for any damages incurred during the relevant time period, whether it was incurred before or after SFR X Holdings, LLC took over ownership and operation of the stores.

**Greg Chaffin**

38.     Defendant Greg Chaffin is the President of Operations of SFR X Holdings, LLC.

39.     Greg Chaffin is involved in the operation of SFR X Holdings, LLC.

7

40.    Through SFR X Holdings, LLC, Greg Chaffin operates the Defendants' Pizza Hut stores.

41.    Greg Chaffin acts directly and indirectly on behalf of the Bluegrass Pizza Hut operation in relation to the operation's delivery drivers.

42.    Greg Chaffin has the authority to control the terms of employment of the delivery drivers at Defendants' Pizza Hut stores, even if he sometimes delegates that authority to other individuals and managers.

43.    Greg Chaffin is individually liable to the delivery drivers at the Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA and the Ohio State Law because he operates SFR X Holdings, LLC, and ultimately controls significant aspects of the Defendants' Pizza Hut stores day-to-day functions, and ultimately controls compensation and reimbursement of employees.

44.    At all relevant times—by virtue of his role as President of Operations of SFR X Holdings, LLC—Greg Chaffin has had financial control over the operations at each of the Defendants' Pizza Hut stores.

45.    At all relevant times—by virtue of his role as President of Operations of SFR X Holdings, LLC—Greg Chaffin has had a role in significant aspects of the Defendants' Pizza Hut stores' day to day operations.

46.    At all relevant times—by virtue of his role as President of Operations of SFR X Holdings—Greg Chaffin has had control over the Defendants' Pizza Hut stores' pay policies.

47.     At all relevant times—by virtue of his role as President of Operations of SFR X Holdings—Greg Chaffin has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.

48.     At all relevant times—by virtue of his role as President of Operations of SFR X Holdings—Greg Chaffin has had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

49.     At all relevant times, by virtue of his role as President of Operations of SFR X Holdings, Greg Chaffin has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

50.     At all relevant times, by virtue of his role as President of Operations of SFR X Holdings, Greg Chaffin has had the power to transfer the assets and liabilities of SFR X Holdings.

51.     At all relevant times, by virtue of his role as President of Operations of SFR X Holdings, Greg Chaffin has had the power to declare bankruptcy on behalf of SFR X Holdings.

52.     At all relevant times, by virtue of his role as President of Operations of SFR X Holdings, Greg Chaffin has had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

53.     At all relevant times, by virtue of his role as President of Operations of SFR X Holdings, Greg Chaffin has had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

54.     At all relevant times, by virtue of his role as President of Operations of SFR X Holdings, Greg Chaffin has authority over the overall direction of each of Defendants' Pizza Hut stores and was ultimately responsible for their operations.

55.     The Defendants' Pizza Hut stores and operation function for Greg Chaffin's profit.

56.     Greg Chaffin has influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

57.     Upon information and belief Greg Chaffin, entered into a transaction to purchase or otherwise take ownership of Defendants' Pizza Hut stores, which had been previously owned and operated by the Hallrich Defendants.

58.     Upon information and belief, Greg Chaffin is liable as a successor in interest for damages suffered by Plaintiff and the delivery drivers at Defendant's' Pizza Hut stores during all relevant times while Defendants' Pizza Hut stores were owned and operated by the Hallrich Defendants because:

a) Upon information and belief, that there is an express or implied agreement by Greg Chaffin to assume the Hallrich Defendants' liability;

b) Upon information and belief, the transfer of Defendants' Pizza Hut Stores from the Hallrich Defendants to Greg Chaffin was a de facto merger;

c) Upon information and belief, Greg Chaffin has the ability to provide relief for the claims alleged;

d) Upon information and belief, Greg Chaffin knew or should have known that the pay practices it continued were, in fact, illegal. Thus, Greg Chaffin was on notice of the claims in this case. This is particularly true given the proliferation of pizza delivery driver lawsuits.

e) Upon information and belief, there has been a substantial continuity of business operations between Greg Chaffin and the Hallrich Defendants' business;

f) Upon information and belief, Greg Chaffin uses the same facilities as the Hallrich Defendants;

g) Upon information and belief, Greg Chaffin uses the same or substantially the same workforce as the Hallrich Defendants;

h) Upon information and belief, Greg Chaffin uses the same or substantially the same supervisory personnel as the Hallrich Defendants;

i) Upon information and belief, that the same jobs existed under substantially the same working conditions at Defendants' Pizza Hut Stores when they were owned by the Hallrich Defendants;

j) Upon information and belief, Greg Chaffin uses the same machinery, equipment and methods of production as the Hallrich Defendants; and

k) Upon information and belief, Greg Chaffin produces the same product as the Hallrich Defendants.

l) At this time, it is unknown whether the Hallrich Defendants can provide the relief sought in this lawsuit.

m) To the extent that the Hallrich Defendants are liable for any of the claims in this lawsuit, so too is Greg Chaffin as a successor.

59.     Because Greg Chaffin is a successor to the Hallrich Defendants, Greg Chaffin is liable to delivery drivers for any damages incurred during the relevant time period, whether it was incurred before or after Greg Chaffin took over ownership and operation of the stores.

**Potential Additional Defendants**

60.     Upon information and belief, there are other individuals, entities, and/or limited liability companies that make up or have made up part of the Defendants' Pizza Hut stores, and therefore qualify as "employers" because they are part of the organized group of individuals and entities that act directly or indirectly on behalf of the Defendants' Pizza Hut stores in relation to Plaintiff and Plaintiff's similarly situated co-workers.

61.     Upon information and belief, the franchisor, Pizza Hut, may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut stores.

62.     Upon information and belief, there are a number of his executives and/or business partners of Defendants' Pizza Hut stores, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and Virginia wage and hour laws.

63.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**<u>Class-wide Factual Allegations</u>**

64.     During all relevant times, Defendants have operated the Defendants' Pizza Hut stores.

65.     The primary function of the Defendants' Pizza Hut stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

66.     Some or all of the Defendants' Pizza Hut stores employ delivery drivers.

67.     Plaintiff and the similarly situated persons that Plaintiff seeks to represent are current

12

and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores.

68.     All delivery drivers employed at the Defendants' Pizza Hut stores over the last three years have had essentially the same job duties—to deliver pizza and other food items to customers.

69.     Drivers at the Defendants' Pizza Hut stores work "dual jobs."

70.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked while completing deliveries.

71.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage or minimum wage minus a tip credit for the hours they worked inside the restaurant.

72.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

73.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cellphone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

74.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cellphone and data charges all for the primary benefit of Defendants.

75.     Defendants require delivery drivers at Defendants' Pizza Hut stores to provide cellphones to use while completing deliveries for Defendants.

76.     Defendants require delivery drivers to maintain and pay for operable cellphones to use in delivering Defendants' pizza and other food items.

77.     The Defendants' Pizza Hut stores did not reimburse the delivery drivers' cellphone expenses.

78.     The Defendants' Pizza Hut stores did not track or record the delivery drivers' cellphone expenses.

79.     Upon information and belief, Defendants currently reimburse their delivery drivers' automobile expenses based on a set amount per mile.

80.     Defendants' Pizza Hut stores did not track or record the delivery drivers' actual automobile expenses.

81.     Defendants' Pizza Hut stores did not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

82.     Defendants did not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

83.     Defendants did not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

84.     Defendants did not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

85.     Defendants did not collect receipts of delivery drivers' automobile registration costs.

86.     Defendants did not collect receipts of delivery drivers' automobile financing or purchase costs.

14

87.     Defendants did not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Pizza Hut stores.

88.     Defendants' Pizza Hut stores did not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

89.     Defendants' Pizza Hut stores did not reimburse their delivery drivers for the actual expenses the delivery drivers incur.

90.     Defendants' Pizza Hut stores did not reimburse their delivery drivers' automobile expenses at the IRS standard business mileage rate.

91.     Defendants' Pizza Hut stores did not even reasonably approximate the delivery drivers' automobile expenses.

92.     Defendants' Pizza Hut stores' reimbursement payments resulted in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

93.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

      a.    2018: 54.5 cents/mile
      b.    2019: 58 cents/mile
      c.    2020: 57.5 cents/mile
      d.    2021: 56 cents/mile
      e.    2022 (Jan.-July): 58.5 cents/mile
      f.    2022(July-Dec.): 62.5 cents/mile
      g.    2023: 65.5 cents/mile
      h.    2024: 67 cents/mile

94.     The delivery drivers at the Defendants' Pizza Hut stores had incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cellphone and data charges.

95.     The delivery drivers at Defendants' Pizza Hut stores advanced a business expense, interest free, to Defendants when they provided cars to use at work.

96.     Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

97.     Defendants benefit from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

98.     Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

99.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA, and/or Ohio law.

100.    At all relevant times, Defendants had applied the same pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Hut stores.

101.    All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate or at a tipped wage rate before deducting unreimbursed vehicle costs.

102.    Regardless of the precise amount of the reimbursements paid at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

16

103.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

104.     Defendants rely on the same flawed policy and methodology with respect to all delivery drivers at all of the Defendants' Pizza Hut stores.

105.     Defendants failed to properly take a tip credit from Plaintiff's wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

106.     Defendants willfully failed to pay federal and Ohio state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Pizza Hut stores.

107.     Defendants' policy of under-reimbursement unjustly enriches them at the expense of their delivery drivers. Under-reimbursing delivery drivers allows Defendants to shift business expenses onto their employees, which confers various benefits on Defendants beyond and in excess of the direct savings from violating wage laws.

108.     All of Defendants' delivery drivers conferred a benefit on Defendants by providing cellphones to use when delivering pizza and other food items for Defendants.

109.     All of Defendants' delivery drivers conferred a benefit on Defendants by providing vehicles to deliver pizza and other food items for Defendants.

**Plaintiff's Individual Factual Allegations**

110.     Plaintiff worked for Defendants as a pizza delivery driver at the Defendants' Pizza

Hut store in Niles, Ohio, and Youngstown, Ohio from approximately the end of 2020 – September 2023.

111.    Plaintiff worked dual jobs—one inside the store, and one outside the store.

112.    Plaintiff was paid minimum wage minus a tip credit as an hourly rate for all hours worked.

113.    Plaintiff made $8.00 per hour while out on deliveries.

114.    Plaintiff delivered pizza and other food items to Defendants' customers' homes and businesses.

115.    When she was not making deliveries, Plaintiff worked inside the restaurant, completing tasks such as answering phones, helping with customers, preparing food, doing dishes, and/or doing other tasks necessary for the operation of the restaurant.

116.    Plaintiff was required to use her own car to deliver pizzas.

117.    Plaintiff was required to use her own cellphone when delivering pizzas.

118.    Plaintiff was paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours she worked inside the restaurant.

119.    Plaintiff was reimbursed per mile while completing deliveries for Defendants.

120.    Plaintiff received $0.30 per mile while she completed deliveries for Defendants.

121.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

122.    Plaintiff was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

123.    Plaintiff was required to incur and/or pay job-related expenses, including but not

18

limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellphone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

124.    Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incur cellphone and data charges all for the primary benefit of Defendants.

125.    Defendants did not track the actual expenses incurred by Plaintiff.

126.    Defendants did not ask Plaintiff to provide receipts of the expenses she incurs while delivering pizzas and other food items for Defendants.

127.    Defendants' Pizza Hut stores did not collect receipts from Plaintiff related to the expenses she incurs while completing deliveries.

128.    Defendants did not collect receipts of Plaintiff 's gasoline purchases during weeks when she works for Defendants.

129.    Defendants did not collect receipts of Plaintiff 's automobile maintenance, repair, and parts purchased or paid for during weeks when she works for Defendants.

130.    Defendants did not collect receipts of Plaintiff's monthly or annual automobile insurance costs.

131.    Defendants did not collect receipts of Plaintiff 's automobile registration costs.

132.    Defendants did not collect receipts of Plaintiff 's automobile financing or purchase costs.

133.    Defendants did not collect any other receipts from Plaintiff related to the automobile expenses she incurs as a delivery driver at Defendants' Pizza Hut stores.

134.     Defendants did not track the cellphone expenses incurred by Plaintiff.

135.     Defendants did not ask Plaintiff to provide records of cellphone expenses she incurred while delivering pizzas for Defendants.

136.     Defendants did not collect receipts of Plaintiff 's cellphone data plan expenses.

137.     Defendants did not reimburse Plaintiff for her cellphone expenses.

138.     Defendants did not reimburse Plaintiff based on her actual delivery-related expenses.

139.     Plaintiff was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

140.     During Plaintiff 's employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

141.     Plaintiff regularly made approximately 3 deliveries per hour during the hours she works as a delivery driver.

142.     Plaintiff regularly drove approximately 5 miles round trip per delivery.

143.     In late 2022, for example, the IRS business mileage reimbursement had been $.625 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff by $.325 per mile ($.625 - $.30). Considering Plaintiff's estimate of 5 miles per delivery, Defendants under-reimbursed her $1.625 per delivery ($.325 x 5 miles), and $4.875 per hour (3 deliveries per hour).

144.     Defendants failed to properly take a tip credit from Plaintiff 's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff they would be taking.

145.     As a result of unreimbursed automobile expenses and other job-related expenses, Defendants failed to pay Plaintiff minimum wage as required by law.

146.     Defendants were unjustly enriched by Plaintiff in that she used her own vehicle and incurred vehicle-related expenses for Defendants' benefit.

147.     Defendants were unjustly enriched by Plaintiff in that she used her own cellphone and incurred cellphone-related expenses for Defendants' benefit.

## Collective Action Allegations

148.     Plaintiff brings the First Count on behalf of herself and all similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

149.     At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

150.     Defendants' unlawful conduct is pursuant to a corporate policy or practice.

151.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

152.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

153.     The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Ohio Class Action Allegations

154.     Plaintiff brings the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Pizza Hut stores in the State of Ohio between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Ohio Wage Subclass").

155.     Plaintiff brings the Fifth Count under Federal Rule of Civil procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Pizza Hut stores in the State of Ohio between the date six years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Ohio Unjust Enrichment Subclass").

156.     Together, the Rule 23 Ohio Wage Subclass and Rule 23 Ohio Unjust Enrichment Subclass constitute the "Rule 23 Ohio Class."

157.     Excluded from the Rule 23 Ohio Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Ohio Class.

158.     The number and identity of the Rule 23 Ohio Class members are ascertainable from

Defendants' records.

159.     The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Ohio Class member and the benefits conferred by the Rule 23 Ohio Class members and realized by Defendants are determinable from Defendants' records.

160.     For the purpose of notice and other purposes related to this action, the Rule 23 Ohio Class members' names and contact information are readily available from Defendants.

161.     Notice can be provided by means permissible under Rule 23 for the Rule 23 Ohio Class members.

162.     The Rule 23 Ohio Class members are so numerous that joinder of all members is impracticable.

163.     The disposition of the Rule 23 Ohio Class members' claims as a class will benefit the parties and the Court.

164.     There are more than 50 Rule 23 Ohio Class members.

165.     Plaintiff's claims are typical of those claims which could be alleged by any class member in either the Rule 23 Ohio Class, and the relief sought is typical of the relief which would be sought by each Rule 23 Ohio Class member in separate actions.

166.     Plaintiff and the Rule 23 Ohio Class members have also unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

167.     Plaintiff and the Rule 23 Ohio Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

168.     Plaintiff and the Rule 23 Ohio Class sustained similar losses, injuries, and damages

arising from the same unlawful practices, polices, and procedures.

169.    By seeking to represent the interests of the Rule 23 Ohio Class members, Plaintiff is exercising and intends to exercise her right to engage in concerted activity for the mutual aid or benefit of herself and her co-workers.

170.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Ohio Class and has no interests antagonistic to the Rule 23 Ohio Class.

171.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

172.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Ohio Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Ohio Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications

with respect to the individual Rule 23 Ohio Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Ohio Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

173. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

174. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

175. The Rule 23 Ohio Wage Subclass and the Rule 23 Ohio Unjust Enrichment Subclass are properly treated as subclasses pursuant to Rule 23(c)(5).

176. Common questions of law and fact exist as to the Rule 23 Ohio Class that predominate over any questions only affecting Plaintiff and the Rule 23 Ohio Class members individually and include, but are not limited to:

      a. Whether Plaintiff and the Rule 23 Ohio Class members were subject to a common expense reimbursement policy;

      b. Whether Plaintiff and the Rule 23 Ohio Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

      c. Whether Plaintiff and the Rule 23 Ohio Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants; and

d.  Whether Plaintiff and the Rule 23 Ohio Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

e.  Whether Defendants collected and maintained records of Plaintiff and the Rule 23 Ohio Class members' actual vehicle expenses;

f.  Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Class members for their actual expenses;

g.  Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

h.  Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Class members based on a reasonable approximation of the expenses they incurred;

i.  Whether Defendants properly reimbursed Plaintiff and the Rule 23 Ohio Class members;

j.  Whether Plaintiff and the Rule 23 Ohio Class conferred a benefit on Defendants that Defendants were aware of;

k.  Whether Defendants accepted the benefits conferred on them by Plaintiff and the Rule 23 Ohio Class;

l.  Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Rule 23 Ohio Class without compensating for it;

m.  The nature and extent of class-wide injury and the measure of damages for those injuries.

177.  In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Ohio Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

178.  Plaintiff restates and incorporate the foregoing allegations as if fully rewritten

herein.

179.     Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

180.     Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

181.     Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

182.     Defendants' failure to properly reimburse Plaintiff and the FLSA Collective for vehicle expenses resulted in Plaintiff and the FLSA Collective being paid less than the minimum wage rate they were due in some or all workweeks.

183.     Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because some or all of Plaintiff and the FLSA Collective were paid a wage rate lower than Defendants informed them that they would be paid.

184.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

185.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

**186.**     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Ohio Class)**

187.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

188.    Defendants pay Plaintiff and the Rule 23 Ohio Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

189.    Defendants ostensibly pay Plaintiff and the Rule 23 Ohio Class at or close to minimum wage for the hours they worked.

190.    Because Defendants require Plaintiff and the Rule 23 Ohio Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiff and the Rule 23 Ohio Wage Class minimum wage.

191.    By not paying Plaintiff and the Rule 23 Ohio Wage Class at least minimum wage for each hour worked, Defendants have violated the Ohio Constitution, Article II, § 34a.

192.    As a result of Defendants' violations, Plaintiff and the Rule 23 Ohio Wage Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 3**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Ohio Class)**

193.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

194.    During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Ohio Class were employees within the meaning of O.R.C. § 4113.15 and were not

exempt from its protections.

195.     O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Ohio Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

196.     By failing to pay Plaintiff and the Rule 23 Ohio Class all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

197.     Plaintiff and the Rule 23 Ohio Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

198.     In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

As a result of Defendants' willful violation, Plaintiff and the Rule 23 Ohio Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

## Count 4
### Damages Pursuant to O.R.C. § 2307.60
### (On Behalf of Plaintiff and the Rule 23 Ohio Wage Class)

199.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

200.     The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

201.     By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Ohio Class have been injured as a result.

202.     O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

203.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Ohio Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

### Count 5
### Unjust Enrichment
### (On Behalf of Plaintiff and Rule 23 Ohio Unjust Enrichment Class)

204.     The Rule 23 Ohio Unjust Enrichment Class members at the Defendants' Pizza Hut stores have conferred a benefit on Defendants by using their own cars and cellphones to perform work for Defendants.

205.     Defendants are aware of and have accepted the benefit conferred on them by Rule 23 Ohio Unjust Enrichment Class members.

206.     It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Rule 23 Ohio Unjust Enrichment Class members without commensurate compensation.

207.     Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the six (6) years preceding the filing of this complaint.

### Count 6
### Successor Liability against
### (On Behalf of Plaintiff , the FLSA Collectives, and the Rule 23 Ohio Class)

208.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

209.     In approximately early 2022, the Hallrich Defendants sold some or all of its Pizza Hut franchise store locations to the Bluegrass Defendants.

210.     Defendants' Pizza Hut stores continued to operate under the same or substantially similar policies after the Bluegrass Defendants took over, including with respect to delivery driver compensation and delivery reimbursement payments.

211.    The Bluegrass Defendants knew or should have known that the pay practices it continued (outlined above) were, in fact, illegal. Thus, the Bluegrass Defendants were on notice of the claims in this case. This is particularly true given the proliferation of pizza delivery driver lawsuits.

212.    After the sale to the Bluegrass Defendants, Defendants' Pizza Hut stores continued to use many of the same employees, jobs, supervisory personnel, working conditions, equipment, and methods of doing business that the Hallrich Defendants had used. The Bluegrass Defendants offered the same products and services that the Hallrich Defendants offered.

213.    It is unknown at this time whether the Hallrich Defendants can provide the relief sought in this lawsuit.

214.    As a result of the foregoing, to the extent that the Hallrich Defendants are liable for any of the claims in this lawsuit, so too are the Bluegrass Defendants as a successor.

**WHEREFORE, Plaintiff prays for all of the following relief:**

A.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Designation of Plaintiff as representative of the Rule 23 Ohio Wage Class and Rule 23 Ohio Unjust Enrichment Class, and counsel of record as Class Counsel for both Classes.

D.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure.

E.      A declaratory judgment that the practices complained of herein are unlawful under the Section 34a and the Prompt Pay Act.

F.      An award of unpaid minimum wages and unreimbursed expenses due under Section 34a and the Prompt Pay Act.

G.      An award of damages under Section 34a and the Prompt Pay Act, based on Defendants' failure to pay wages, calculated as an additional one time of back wages.

H.      An award of restitution for unjust enrichment under Ohio law.

I.      An award of prejudgment and post-judgment interest.

J.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K.      Such other legal and equitable relief as the Court deems appropriate.


Dated this 11th Day of January 2024.


                                        Respectfully submitted,


                                        /s/ *Andrew P. Kimble*
                                        Andrew R. Biller (Bar # 0081452)
                                        Andrew P. Kimble (Bar # 0093172)
                                        Laura E. Farmwald (Bar # 0095304)
                                        Biller & Kimble, LLC
                                        8044 Montgomery Road
                                        Suite 515
                                        Cincinnati, OH 45236
                                        513-202-0710 (Phone)
                                        614-340-4620 (Fax)
                                        *abiller@billerkimble.com*
                                        *akimble@billerkimble.com*

                                        32

*lfarmwald@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

**Certificate of Service**

I hereby certify that on the 11th Day of January 2024, a copy of the foregoing was filed electronically. The parties will receive notice and service of this filing through the Court's electronic filing system.

_/s/Andrew P. Kimble_
Andrew P. Kimble