UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MADELYN HESS, *et al.*, | ) | CASE NO. 4:24-cv-77 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| HALLRICH, INC., *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

Before the Court is a motion to compel arbitration filed by SFR X Holdings, LLC, ("SFR") and its president Greg Chaffin ("Chaffin"), both of whom are named defendants (collectively, "Defendants").  (Doc. No. 9.)  The original named plaintiff and opt-in plaintiffs have opposed the motion (Doc. Nos. 12-14, 16, 18), and Defendants have replied.  (Doc. No. 17.)  Defendants' motion to compel arbitration is unopposed by and GRANTED as to Mr. Zimmerman and Mr. Bosley.  The motion is otherwise HELD IN ABEYANCE pending a limited jury trial.  Plaintiff's pending motion to issue notice of collective action (Doc. No. 5) is also HELD IN ABEYANCE.

## I.    Background

### A.    Allegations in the Complaint

On January 11, 2024, plaintiff Madelyn Hess filed this class and collective action under state and federal wage laws.  (Doc. No. 1.)  Since early 2022, SFR *d/b/a* Bluegrass Pizza has owned and operated Pizza Hut franchises in various locations in the United States.  (*Id.* ¶¶ 2-4.)  SFR has its principal place of business in Louisville, Kentucky.  (*Id.* ¶ 27.)  As the President of

Operations of SFR, defendant Greg Chaffin has power and control over the Pizza Hut stores – including with respect to payroll issues.  (*See* Doc. No. 1 at ¶¶ 38-56.)[1]

In approximately early 2022, Hallrich Incorporated ("Hallrich") sold Pizza Hut franchise locations to SFR.  (*Id.* ¶ 209.)  SFR is a legal successor to Hallrich, and the Complaint pleads that SFR may be liable for Hallrich's practices prior to early 2022.  (*See id.* ¶¶ 36-37.)  Hallrich originally was named as a defendant, but on February 26, 2024, Plaintiffs voluntarily dismissed Hallrich as a party.  (Doc. No. 8.)

According to the Complaint allegations, this action concerns current and former delivery drivers for Defendants' Pizza Hut locations.  (Doc. No. 1 at ¶¶ 67-68.)  Drivers at the Defendants' Pizza Hut stores work "dual jobs," *i.e.*, both in the restaurants and on the road making deliveries.  (*Id.* ¶¶ 69, 111.)  Defendants require delivery drivers to maintain and pay for automobiles to use in delivering Defendants' pizza and other food items.  (*Id.* ¶ 72.)  They also require delivery drivers at Defendants' Pizza Hut stores to provide cellphones to use while completing deliveries for Defendants.  (*Id.* ¶ 75.)

The Complaint details expenses related to automobiles and cell phones that are alleged to be paid by employees – expenses which Defendants do not track, collect receipts for, or fully reimburse.  (*See id.* ¶¶ 72-109.)  Because drivers must incur various business-related expenses, those drivers do not earn the applicable minimum wage.  (*Id.*)  Hess's experiences are alleged to typify this dynamic.  (*Id.* ¶¶ 110-47.)

---

[1] The Complaint indicates that other, as-yet unnamed parties, such as the franchisor Pizza Hut, might also be liable for the wage law violations alleged.  (*Id.* ¶¶ 60-63.)

### B.    Causes of Action

Count One is a collective action under the Fair Labor Standards Act ("FLSA") and would include drivers at all of Defendants' Pizza Hut locations nationwide.  (*Id.* ¶¶ 148-53, 178-86.)  Count Two is a class action under Ohio's minimum wage law. (*Id.* ¶¶ 154-77, 187-92.)  Count Three is a class action under Ohio law regarding the timely payment of wages.  (*Id.* ¶¶ 193-98.)  Count Four is a class action under Ohio law that provides a civil damages remedy for violations of criminal law.  (*Id.*  ¶¶ 199-203.)  It is alleged that Defendants' willful violations of the federal FLSA constitute criminal violations.  (*Id.* ¶¶ 200-01.)  Count Five is a class action under Ohio law for unjust enrichment.  (*Id.* ¶¶ 204-07.)  Count Six asserts successor liability against SFR and Chaffin for Hallrich's violations of state and federal wage laws.  (*Id.* ¶¶ 208-14.)

### C.    Opt-In Plaintiffs

Madelyn Hess was the initial plaintiff.  (Doc. 1 at ¶¶ 1, 13-15.)  On January 25, 2024, Tina Bailey, Joy Glover, Cheyenne Lipe, and Shawn Zimmerman consented to join as opt-in plaintiffs.  (Doc. No. 4 at 63.)[2]  During March and April 2024, Kevin Bosley, Jessie Kennell, Brian Slanina, and Justin Wenzel also opted in.  (Doc. Nos. 12-14.)

In response to Defendants' motion, opt-in plaintiffs Shawn Zimmerman and Kevin Bosley informed the Court that they *did* agree to arbitration and will pursue their wage claims in that forum.  (Doc. No. 16 at 171; Doc. No. 18 at 240 n.1.)  Accordingly, Defendants' motion to compel arbitration as to Shawn Zimmerman and Kevin Bosley is granted as unopposed.[3]

---

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.
[3] With Zimmerman and Bosley dismissed, "Plaintiffs" will mean Hess, Bailey, Glover, Lipe, Kennell, Slanina, and Wenzel.

### D.      Evidentiary Record

Defendants' HR director Ashley Young attests that "[t]he Agreements signed by

Plaintiffs are all identical."  (Doc. No. 9-1 at 132; Doc. No. 17-2 at 224.)  Those agreements

provide:

> [I]f you are unable to resolve any such complaints or disputes to your satisfaction internally, the resolution of all disputes that arise between you and Bluegrass Pizza will be through formal, mandatory arbitration before a neutral arbitrator.
>
> Because of, among other things, the delay and expense which result from the use of the court systems, any legal or equitable claims or disputes arising out of or in connection with your employment, the terms and conditions of your employment, or the termination of employment with Bluegrass Pizza will be resolved by binding arbitration instead of in a court of law or equity.  This applies to all disputes involving legally protected rights (e.g., local, state, and federal statutory, contractual or common law rights) regardless of when the statute was enacted or the common law doctrine was recognized (e.g., either before or after this arbitration agreement and policy became effective). This agreement does not limit your ability to pursue any external administrative remedy (such as with the EEOC).
>
> This policy substitutes one legitimate dispute resolution form (arbitration) for another (litigation), thereby waiving any right of either party to have a dispute resolved in court.  This substitution involves no surrender, by either party, of any substantive statutory or common law benefits, protection, or defense for individual claims.  You do, however, waive the right to commence or be a party to any representative, collective or class action.
>
> *  *  *
>
> I understand that by accepting and/or continuing employment, that I am agreeing to substitute one legitimate dispute resolution form (arbitration) for another (litigation), thereby waiving any right to have my dispute resolved in court.  This substitution involves no surrender, by either party, of any substantive statutory or common law benefits, protection, or defense for individual claims. I do, however, hereby waive the right to commence or be a party to any representative, collective or class action.
>
> I understand that if I should become employed by Bluegrass Pizza or its related companies, such employment is conditioned upon this agreement and I understand that this agreement must be agreed to in order for me to be considered

for employment with Bluegrass Pizza or its related companies, or if I am already
employed by Bluegrass Pizza, I understand this agreement must be agreed to
and signed by me in order for my employment to continue.  The parties agree
that this is not intended to add to, create or imply any contractual or other right
of employment.  The party's employment relationship is at will, and no other
inference is to be drawn from this agreement.  By clicking in for a shift
following your 18th birthday you are again agreeing to follow and be bound by
all of the Company's rules and policies contained in the employee handbook,
including the Agreement to Arbitrate.

(*See, e.g.,* Doc. No. 9-1 at 134-35.)

Young further attests that the plaintiffs:

each signed the Agreement electronically.  Specifically, a .pdf copy of the entire
Agreement was presented to Plaintiffs electronically via the PeopleMatter
human-resources onboarding platform.  To complete the electronic onboarding
process, the PeopleMatter platform required Plaintiff to open the Agreement and
scroll to the end of the Agreement, thus ensuring they had an opportunity to
review the entire Agreement.  At the time of signing, Plaintiffs each had the
opportunity to thoroughly review and print a copy of the Agreement for their
own personal records.  Plaintiffs' electronic signatures and signature time-
stamps are reflected at the end of [the attached agreements] respectively.

(Doc. No. 9-1 at 131-32; *see also* Doc. No. 17-2 at 224.)[4]

In response, Plaintiffs argue that Defendants purchased multiple Pizza Hut locations in

February 2022.  (Doc. No. 16 at 170.)  "The purchase created a logistical challenge: entering

hundreds of employees' information in Bluegrass Pizza's system and getting the drivers on the

road delivering pizzas.  Bluegrass Pizza solved the problem by having managers complete

onboarding documents for the drivers – including arbitration agreements."  (*Id.*)  Plaintiffs

contend that Defendants' managers were able to do so because they "had ready access to the

---

[4] On reply, as to the later set of opt-in plaintiffs, Young adds the following: "The PeopleMatter
onboarding system also required employees to enter several unique pieces of personal
information, such as emergency contacts, banking information, and debit card information."
(Doc. No. 17-2 at 224.)  Defendants' papers do not indicate whether any plaintiff performed that
step and entered that information.

employees' login credentials because those were stored in a notebook next to the in-store computers used to access PeopleMatter." (*Id.*)

Plaintiffs attest that they did not sign the arbitration agreements at issue. (*Id.* (citing Hess Decl., ¶¶ 22-25; Bailey Decl., ¶¶ 10-15; Glover Decl., ¶¶ 14-18; Slanina Decl., ¶¶ 8, 16); Doc. No. 18 at 240 (citing Slanina Decl., ¶¶ 3-8; Wenzel Decl., ¶¶8-10; Kennell Decl., ¶¶ 4-7).) Plaintiffs also attest that the arbitration agreements were never presented to them as conditions of ongoing employment. (*E.g.,* Doc. No. 16-1 at 180-81, ¶¶ 20-25; Doc. No. 16-2 at 185-86, ¶¶ 10-15; Doc. No. 16-3 at 189, ¶¶ 11-18; Doc. No. 16-5 at 196-97, ¶¶ 6-17; Doc. No. 18-2 at 248-49, ¶¶ 6-12; Doc. No. 18-3 at 251-52, ¶¶ 4-7; Doc. No. 16-4 at 192-93, ¶¶ 6-14.)

### E.  Pending Motions

On February 8, 2024, Plaintiffs filed a motion to send notice of a collective action pursuant to the FLSA.  (Doc. No. 5.)

On March 4, 2024, Defendants filed a motion to compel arbitration asserting that the putative plaintiffs each executed binding agreements with SFR to arbitrate "any legal or equitable claim" arising out of their employment.  (Doc. No. 9 at 119, 121.)  "Pursuant to Section 4 of the Federal Arbitration Act ('FAA'), Defendants ask this Court to issue an order compelling arbitration pursuant to the terms of the parties' agreements."  (Doc. No. 9 at 121.)

Defendants also moved the Court to dismiss this entire action on the ground that every plaintiff purportedly was bound by arbitration agreements.  (*See id.* at 119, 121, 125, 128.)  And because arbitrability "is a dispositive threshold matter, Defendants further request that the Court stay briefing and hold in abeyance" Plaintiffs' motion to issue notice of a collective action. (Doc. No. 9 at 119-20.)

On April 17, 2024, Plaintiffs timely filed a brief in opposition to Defendants' motion to compel arbitration and dismiss.  (Doc. No. 16 at 169.)[5]  Plaintiffs argued that "Defendants' Motion to Compel Arbitration is an easy one to resolve.  Plaintiffs did not sign the arbitration agreements, so there are no agreements to enforce."  (*Id.*)  Plaintiffs asked the Court either to deny the motion to compel outright or otherwise "proceed to discovery and trial [under] *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 844 (6th Cir. 2021); 9 U.S.C. §4."  (*Id.*)

As to notice, Plaintiff argued that the Court should not delay notice because any of the co-plaintiffs could take the place of Madelyn Hess.  (*Id.* at 176.)  But "[i]f Defendants file a motion or supplement their current motion, Plaintiff will respond to any substantive arguments at that time."  (*Id.* at n.5.)

Defendants submitted argument and evidence regarding the additional opt-in plaintiffs. (Doc. No. 17 at 218-19; Doc. No. 17-2 at 224.)  And those additional opt-in plaintiffs filed argument and evidence in response.   (Doc. No. 18.)

Plaintiffs' responses include a jury demand.  (Doc. No. 16 at 177; Doc. No. 18 at 243.) Plaintiffs demand "a jury trial by the maximum persons permitted by law on the validity and enforceability of the arbitration agreements at issue and by all other issues permissible under 9 U.S.C. § 4 triable to a jury."  (*Id.*)

## II.   Law and Analysis

Defendants contend that the wage dispute described in the Complaint would fall within the scope of the boilerplate language in the arbitration agreements.  (Doc. No. 9 at 125-27.) Plaintiffs do not suggest otherwise.  (*See, e.g.,* Doc. No. 9-1 at 134-35.)  And both sides agree on

---

[5] On April 1, 2024, all parties jointly and by agreement moved the Court for extensions of briefing deadlines.  (Doc. No. 15.)  The Court granted that joint motion.  (Order [non-document] April 3, 2024.)

the applicability of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") and on the relevant,

controlling Sixth Circuit precedent, *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832,

836-38, 844 (6th Cir. 2021).  (*See* Doc. No. 9 at 124-25; Doc. No. 16 at 169; Doc. No. 18 at

240.)  The dispute boils down to whether the Plaintiffs agreed to arbitration, either in writing or

by continued, informed performance.

  **A.  Standard of Review**

  The FAA provides, in pertinent part:

> The court shall hear the parties, and upon being satisfied that the making of the
> agreement for arbitration or the failure to comply therewith is not in issue, the
> court shall make an order directing the parties to proceed to arbitration in
> accordance with the terms of the agreement.  . . . If the making of the arbitration
> agreement . . . be in issue, the court shall proceed summarily to the trial thereof.
> . . . If the jury find that an agreement for arbitration was made in writing and
> that there is a default in proceeding thereunder, the court shall make an order
> summarily directing the parties to proceed with the arbitration in accordance
> with the terms thereof.

9 U.S.C. § 4.

  "Although the [FAA] requires a court to summarily compel arbitration upon a party's

request, the court may do so only if the opposing side has not put the making of the arbitration

contract 'in issue.'"  *Boykin*, 3 F.4th at 835 (quoting 9 U.S.C. § 4).  The Sixth Circuit holds that

"employees who do not sign individual arbitration agreements are free to sue collectively, and

those who do sign individual arbitration agreements are not."  *Gaffers v. Kelly Servs., Inc.*, 900

F.3d 293, 296 (6th Cir. 2018).

  Generally applicable contract defenses, such as the lack of formation of a contract, can

invalidate an arbitration agreement.  *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 507 (2018);

*Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011); *Camara v.*

*Mastro's Restaurants LLC*, 952 F.3d 372, 373 (D.C. Cir. 2020) (cited in *Boykin*).  A "party's

right to a judicial forum represents the default rule; the duty to arbitrate arises only from the party's consent.  So parties cannot be forced into an arbitral forum unless they actually agreed to arbitrate.  And courts must confirm that they did so before shipping the dispute to arbitration – as § 4's procedures make plain."  *Boykin*, 3 F.4th at 843 (citations omitted).

"Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  The present "motion to compel may not be finally resolved until the validity of the arbitration agreement has been decided."  *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 627 (6th Cir. 2003).  "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."  *Id.* at 624.

The party asserting the formation and existence of an arbitration agreement bears the burden of showing that the agreement exists.  "Under Rule 56, [an employer] had the initial duty to present evidence that would allow a trier of fact to find all required elements of a contract (including [the employee's] acceptance) because it bore the burden of proof on its contract claim under § 4" of the FAA.  *Boykin*, 3 F.4th at 839.

**B.     Discussion**

In *Boykin*, an employer moved to compel arbitration and argued that the plaintiff electronically agreed to an arbitration contract as part of an electronic on-boarding or training session.  *Id.* at 836.  Alternatively, the employer argued that by continuing to work for the company after being notified of arbitration as a condition of employment, the employee thereby consented through his actions.  *Id.*  "[Plaintiffs] accepted the contract either by electronically

acknowledging it or by continuing to work for [Defendants] after learning of it." *Id.* at 839 (emphasis omitted). (*Cf.* Doc. No. 9 at 123-24; Doc. No. 17 at 212-13, 215-16.)[6]

The employee responded with an affidavit attesting that he neither consented to nor acknowledged an arbitration agreement when on-boarding or thereafter. *Boykin*, 3 F.4th at 840. The employee further attested that that no one ever told him that arbitration was a condition of his employment. *Id.* Applying the standard borrowed from summary judgment – because the motion papers included evidence – the Sixth Circuit held that a fact dispute put the formation and existence of an enforceable arbitration contract "at issue." *Id.* at 838; *see* 9 U.S.C. § 4.

> If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question. In order to show that the validity of the agreement is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit. [A court must] determine whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists.

*Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citations omitted). *Boykin* reconfirmed that "[t]his analogy to summary judgment provides the right way to assess a motion to compel arbitration under § 4. The question whether the party opposing arbitration has put the making of the arbitration contract 'in issue' looks a lot like the question whether a party has raised a 'genuine issue as to any material fact'" under Rule 56. *Boykin*, 3 F.4th at 838.

*Boykin* explained what an employee must show in response to a motion to compel arbitration in order to establish a genuine dispute over whether the employee accepted the arbitration agreement. *Id.* at 839. The employee "need[s] to present 'specific facts, as opposed

---

[6] Those are basically the same two bases for enforcing the arbitration agreements here. The parties agree that *Boykin* provides the framework for evaluating this motion. (*See* Doc. No. 9 at 124-25, 128; Doc. No. 16 at 169, 172, 174; Doc. No. 17 at 213-14; Doc. No. 18 at 240.)

to general allegations,' that would allow a rational trier of fact to find that he did not acknowledge the agreement or learn about the arbitration condition of employment in other ways." *Id.* (quoting *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020)).  An employee's memory lapse by itself does not suffice.  *Id.* at 839-40

"On the other hand, an unequivocal denial that takes the form of admissible evidence can create a genuine dispute of fact.  . . .  So a party might be able to obtain a trial under § 4 with a sworn denial that the party ever signed an arbitration agreement or received arbitration materials." *Id.* at 840 (quotations and citations omitted).  In *Boykin*, the Sixth Circuit held that an employee's affidavit denying that he had accepted the contract or received notice of the arbitration policy sufficed to create a genuine fact dispute.  *Id.*  "Some circumstantial evidence also supports [the employee's] denials." *Id.  Boykin* concluded that the employee had "identified a genuine dispute of fact over whether the parties have formed a contract – a dispute that entitles him to targeted discovery and a trial on the question." *Id.* at 841.

## C.     Material Fact Disputes

The affidavits from Plaintiffs demonstrate that "an 'unequivocal denial' that takes the form of admissible 'evidence' can create a genuine dispute of fact." *Id.* at 840.  "After all, courts must review factual conflicts in the light most favorable to the opposing party.  So a party might be able to obtain a trial under § 4 with a sworn denial that the party ever signed an arbitration agreement or received arbitration materials." *Id.* (quotation and citation omitted).

As described above, the affidavits here assert that the Plaintiffs did not sign or receive the arbitration agreements Defendants wish to enforce.  The affidavits also indicate that Defendants' onboarding and electronic consent system did not operate in the manner Defendants describe.

As for Defendants' argument that all Plaintiffs accepted the agreements *de facto* because they continued to work for Defendants after they acquired the Pizza Hut locations, this case presents the same situation as in *Boykin*. Plaintiffs deny having signed or seen the arbitration agreements. And Defendants have "offered no other evidence showing that [Plaintiffs] learned of this arbitration condition in other ways." *Id.* at 844.

### D.  Hess's Text Messages

Defendants produced text messages from Hess during the time she returned to Pizza Hut. Defendants suggest that this proves Hess was performing the electronic onboarding process. (Doc. No. 17 at 211; Doc. No. 17-1 at 222.) While the text messages arguably may demonstrate a fact dispute as to assertions such as those in Paragraph 10 of the Hess affidavit (*see* Doc. No. 16-1 at 180), the texts do not establish anything about the arbitration agreement. The texts do not show Hess's knowledge regarding arbitration or an arbitration contract.

Moreover, Hess noted in her affidavit that she completed training videos through the PeopleMatter software. (Doc. No. 16-1 at 180-81 ¶¶ 16-20.) Her text messages may refer to the completion of a training module and training paperwork. The texts reproduced in Defendants' papers do not indicate that Hess saw or signed an arbitration agreement. (*See* Doc. No. 17 at 211; Doc. No. 17-1 at 222.)

### III.  <u>Conclusion</u>

For the reasons above, Defendants' motion to compel arbitration was not opposed by either Shawn Zimmerman or Kevin Bosley and is therefore GRANTED as to those plaintiffs. Plaintiffs Zimmerman and Bosley are hereby DISMISSED from this action.

Defendants' motion to compel arbitration with respect to the remaining Plaintiffs is HELD IN ABEYANCE.  The Court will schedule a case management conference to establish a limited discovery schedule and/or trial date.

As to Plaintiffs' pending motion to send notice (Doc. No. 5) and Defendants' request to stay notice pending the resolution of the motion to compel (Doc. No. 9 at 127-28), for the reasons stated in Defendants' opposition and in light of the Court's holding herein, the motion for notice is similarly HELD IN ABEYANCE.

**IT IS SO ORDERED.**

Date:  August 19, 2023

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE